JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELA RWOMWIJHU,<br><br>Plaintiff,<br><br>v.<br><br>SMX, LLC., AMAZON.COM, LLC.,<br><br>Defendants. | Case No. CV 16-08105-AB (PJWx)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND** |

Pending before the Court is Plaintiff Angela Rwomwijhu's Motion to Remand, filed November 18, 2016. (Dkt. No. 10.) Defendant Amazon.com ("Amazon") filed an opposition brief on January 6, 2017 (Dkt. No. 18), and Plaintiff filed a reply brief on January 13, 2017. (Dkt. No. 19.) The Court heard oral argument from the parties on January 30, 2017, and took the matter under submission. (Dkt. No. 20.) For the reasons discussed below, the Court **GRANTS** Plaintiff's Motion to Remand.

**I.    BACKGROUND**

On September 20, 2016, Plaintiff, a former delivery driver for Defendants Amazon and SMX, filed a class action complaint alleging violations of California wage and hour laws in Los Angeles Superior Court. (Dkt. 1-1, Compl. ¶ 1.)

1

1    Plaintiff identified the class in her Complaint as, "[a]ll persons who work or
2 worked for SMX, LLC, providing package pick-up and delivery services in the state of
3 California at any time within the applicable statute of limitations ("Class Period").
4 (Compl. ¶ 47.)  On behalf of herself and the class, Plaintiff alleged Defendants: (1) failed
5 to pay minimum wages for all hours worked in violation of Labor Code sections 1194
6 and 1197 (*id.* at ¶¶ 57-74); (2) failed to provide overtime pay in violation of Labor Code
7 section 510 (*id.* at ¶¶ 75-86); (3) failed to provide meal and rest periods in violation of
8 Labor Code sections 226.7 and 512 (*id.* at ¶¶ 87-116); (4) failed to reimburse Plaintiff
9 and putative class members for necessary expenditures in violation of Labor Code
10 section 2802 (*id.* at ¶¶ 117-26); (5) failed to provide accurate wage statements in
11 violation of Labor Code section 226 (*id.* at ¶¶ 127-39); (6) failed to pay wages upon
12 discharging employees in violation of Labor Code sections 201-204 (*id.* at ¶¶ 140-53);
13 and (7) violated California's Unfair Competition Law under Business and Professions
14 Code § 17200, et seq. (*id.* at ¶¶ 154-66).  Plaintiff also seeks an accounting.  (*Id.* at ¶¶
15 167-71.)
16    Defendants filed a Notice of Removal on October 31, 2016, asserting this Court
17 has jurisdiction under the Class Action Fairness Act ("CAFA").  (Dkt. No. 1, Notice of
18 Removal ("Notice") at 2.)  Plaintiff subsequently filed the instant Motion to Remand.
19 (Dkt. No. 10.)
20    **II.    LEGAL STANDARD**
21    CAFA allows federal courts to exercise jurisdiction over state law class actions
22 when (1) the "matter in controversy exceeds the sum or value of $5,000,000, exclusive
23 of interest and costs," (2) "any member of a class of plaintiffs is a citizen of a State
24 different from any defendant," and (3) the plaintiff's putative classes include at least 100
25 total members.  28 U.S.C. § 1332(d).  As in all removal cases, "the burden of
26 establishing removal jurisdiction remains . . . on the proponent of federal jurisdiction."
27 *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 685 (9th Cir. 2006).
28 ///

### III. DISCUSSION

Plaintiff does not dispute the putative class size is over 100 members. Accordingly, the Court turns to whether minimal diversity and the amount in controversy are established in this case.

#### A. Minimal Diversity

Minimal diversity is established if "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). Plaintiff is a citizen of California. (Compl. ¶ 10.) Plaintiff argues Defendants fail to establish minimal diversity because they applied the wrong standard in determining their citizenship as limited liability companies ("LLC"). (Mot. at 4.) Plaintiff argues the citizenship of an LLC is determined by the citizenship of each of the LLC's members, not the principal place of business and the state under whose laws the LLC is incorporated, as Defendants assert. (*Id.* (citing *Stars & Bars, LLC v. Travelers Cas. Ins. Co. of Am.*, No. SA-CV016-01397-CJC-SSx, 2016 WL 5213901, at *2 (C.D. Cal. Sept. 19, 2016) and *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).) Plaintiff argues removal is thus warranted because Defendants did not establish the citizenship of their members. (Mot. at 6.)

Defendant argues that for CAFA specifically, unincorporated associations are "deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." (Opp'n at 4 (citing 28 U.S.C. § 1332(d)(10).) Defendants further argue that even under the standard articulated by Plaintiff, minimal diversity is established.

Defendants state SMX is organized under the laws of and has its principal place of business in Illinois, and that its only member is TrueBlue Services, Inc., which both is incorporated in and has its principal place of business in Washington.[1] (Declaration of

---

[1] Defendants state in their Opposition that TrueBlue Services, Inc. is incorporated in Delaware and has its principal place of business in Washington. (Opp'n at 5.) A TrueBlue vice president, Todd Gilman, says otherwise in his declaration. The Court

Todd Gilman in support of Defendants' Opposition to Plaintiff's Motion to Remand ¶ 5.) Further, Amazon and its members are all organized under the laws of Delaware and have their principal places of business in Washington. (Declaration of Mark Hoffman in support of Defendants' Opposition to Plaintiff's Motion to Remand ¶¶ 3-6.) Because Plaintiff is a citizen of California, whether LLC citizenship is determined by the citizenship of its members or by its principal place of business and state under the laws of which it is organized for purposes of CAFA, minimal diversity would be established here.

### B. Amount in Controversy

"A defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Armstrong v. Ruan Transp. Corp.*, No. EDCV-16-1143-VAP(SPx), 2016 WL 6267931, at *2 (C.D. Cal. Oct. 25, 2016) (citing *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014). When damages are unstated in a plaintiff's complaint, a defendant seeking removal has the burden of establishing that the aggregate amount in controversy from the plaintiff's claims exceeds $5,000,000. *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). A removing defendant must make this showing by the preponderance of the evidence, *Rodriguez v. AT & T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013), which a removing defendant may establish by providing summary-judgment-type evidence indicating that the aggregate amount in controversy exceeds $5,000,000.[2]

---

relies on the sworn statement in the declaration to determine minimal diversity, but also notes that, whether TrueBlue was incorporated in Delaware or Washington, it would not change the minimal diversity determination.

[2] Defendants argue Plaintiff is also required to submit evidence indicating the amount in controversy requirement is not met. (Opp'n at 1:20-23, 9:12-14.) But this is not required for a plaintiff to prevail on a motion for remand. *Rosales v. Staples Contract & Commercial, Inc.*, No. EDCV-15949-JFW (DTBx), 2015 WL 4537577, at *2 (C.D. Cal. July 27, 2015) ("[C]ontrary to Defendant's contention, *Dart Cherokee* [*Basin*

*Ibarra*, 775 F.3d at 1197. This evidence cannot be speculative or conjectural. *Id*.

### 1. Defendants' Evidence

Defendants calculate the amount in controversy based on the allegations in Plaintiff's second, third, fourth, sixth, and seventh causes of action, in addition to statutory penalties and attorneys' fees. (Notice at 8-12.) They base their calculations on statistics provided by Jennifer Kerksick, the Director of Operations for SMX, who has "access to data regarding SMX employment information such as assignments, weeks worked and hourly pay." (Declaration of Jennifer Kerksick in support of Defendants' Notice of Removal ("Kerksick Decl.") ¶ 2.) Kerksick "reviewed available data for 274 putative class members, including Plaintiff, who worked as delivery drivers assigned to Amazon in California." (*Id.*) Based on this data, Defendants contend 274 putative class members worked 19,692 shifts over 4,995 workweeks at an average hourly pay of $13.99. (*Id.* at ¶¶ 4-6.) Plaintiff does not lodge any formal objections to this evidence.

### 2. Second Cause of Action: Unpaid Overtime

In her second cause of action, Plaintiff alleges Defendants "failed to properly compensate Plaintiff and Class Members proper overtime premium pay for hours worked in excess of eight hours per workday, forty hours per workweek, and/or hours worked on the seventh consecutive day in a workweek." (Compl. ¶ 84.) Defendants estimate putative class members were denied two hours of overtime pay per shift, for a total amount of $826,670.16. (Notice at 8 (citing Compl. ¶ 32).) Defendants derive this estimate from the allegation that Plaintiff and Delivery Drivers were denied two hours of overtime pay per shift. (Compl. ¶ 32. *See also id.* at ¶ 24 (Amazon "structures Delivery Drivers [sic] workloads to ensure that they work approximately 10 to 12 hours

---

*Operating System Co., LLC v. Owens*, 135 S.Ct. 547 (2014)] does not mandate that a plaintiff must always submit evidence challenging the amount in controversy. Instead, *Dart Cherokee*, along with *Ibarra*, only requires a plaintiff to come forward with contrary evidence when the removing defendant has produced evidence to meet its initial burden.").

5

1 or more each workday . . . .").) Defendants argue that the Plaintiff's allegations support
2 a 100% violation rate, such that this two-hour claim by Plaintiff can reasonably be
3 applied to the entire class in calculating the amount in controversy. (Opp'n at 10-11
4 (citing *Sanchez v. Russell Sigler, Inc.*, No. CV-15-01350-AB (PLAx), 2015 WL
5 12765359, at *3(C.D. Cal. Apr. 28, 2015).) The Court disagrees.

6     Plaintiff does not allege the Defendants failed to pay every hour of earned
7 overtime to every putative class member. Instead, Plaintiff alleges Defendants
8 "routinely denied Plaintiff and other Delivery Drivers regular pay" (Compl. ¶ 30), and
9 that "Ms. Rwomwijhu and other Delivery Drivers were [ ] denied proper overtime
10 premium compensation for all overtime hours worked." (*Id.* at ¶ 34.) Discussing similar
11 allegations this Court has explained, "[t]he use of the word 'all' in this contexts suggests
12 that Defendant[s] provided some, but not all [ ] overtime wages owed to the putative
13 class."[3] *Sanchez*, 2015 WL 12765359, at *7. Thus, while Plaintiff's complaint indicates
14 that putative class members were not paid for overtime earned at some point during the
15 relevant period, "it provides no indication of how often that conduct occurred." (*Id.*)

16     Since the Complaint does not serve as a basis for Defendants' proposed violation
17 rate, Defendants have the burden of providing evidence of the frequency of violations.
18 *Ibarra*, 775 F.3d at 1199 (stating defendants "bear[ ] the burden to show that [their]
19 estimated amount in controversy relied on reasonable assumptions"). Defendants have
20 not done so. The single declaration of employee statistics provides no facts to support
21 the assumption that Defendants always failed to pay overtime to every class member.
22 *See Armstrong*, 2016 WL 6267931, at *3. "[C]ourts disavow the use of a 100%
23 violation rate when calculating the amount in controversy absent evidentiary support,"
24 especially when the plaintiff "does not allege that all of [the putative class members]
25

---

26 [3] Though Plaintiff does allege that Defendants "never" compensated her specifically
27 for the time she spent completing her pre-delivery duties, her allegations do not
purport to estimate the frequency or number of hours Defendants failed to pay other
28 class members. (*See* Compl. ¶ 32.)

6

were subject to the same purported violations suffered by [the p]laintiff." *Rosales v. Staples Contract & Commercial, Inc.*, No. EDCV-15-00949-JFW (DTBx), 2015 WL 4537577, at *3 (C.D. Cal. July 27, 2015). Such is the case here. The majority of allegations in support of Plaintiff's overtime claim describe how Defendants failed to fully compensate Plaintiff, specifically. (*See* Compl. ¶¶ 31-33.) Plaintiff's other general allegations, including that "Ms. Rwomwijhu and other Delivery Drivers were also denied proper overtime premium compensation for all overtime hours worked," and that Defendants "failed to properly compensate Plaintiff and Class Members proper overtime premium pay for hours worked in excess of eight hours per workday . . . ," do not provide a factual basis to support Defendants' estimated damages. (*Id.* at ¶¶ 34, 84.) Neither does Plaintiff's allegation that Defendants structured workloads to ensure 10 to 12 hour workdays. (*Id.* at ¶ 24.) Though this allegation may support the inference that Delivery Drivers *earned* overtime, it does not indicate how frequently they were or were not *compensated* for these earned hours. The Court finds Defendants have not met their evidentiary burden for purposes of removal as to this claim, and thus disregards Defendants estimate of $826,670.16 from the amount-in-controversy calculation.

### 3. Third and Fourth Causes of Action: Meal and Rest Periods

Plaintiff's third and fourth causes of action allege Defendants failed to provide meal and rest periods, and failed to provide the associated premium pay for these denials. (Compl. ¶¶ 87-116.) Plaintiff alleges "Defendants regularly denied Plaintiff and Class members lawful unpaid . . . meal periods" and "regularly denied Plaintiff and Class Members lawful paid off-duty ten-minute rest periods . . . ." (*Id.* at ¶ 35.) Plaintiff also claims:

> "Because Plaintiff and Class Members were required to complete all daily pick-ups, deliveries, and other work-related duties before ending their shifts, they typically had no time to take uninterrupted off-duty meal and rest periods if they were to complete their required duties. If Plaintiff or Class Members ever failed to complete all scheduled daily

1
2
3
4
5
6

    deliveries, they would be subject to potential discipline up to and including termination, contract cancellation, and/or non-renewal of contracts. Thus, Ms. Rwomwijhu and other Delivery Drivers were routinely discouraged and prevented from taking uninterrupted meal and rest periods in order to complete deliveries and avoid the imposition of potential disciplinary measures."

7 (*Id.* at ¶ 36.) Further, "Defendants systematically denied Plaintiff and Delivery Drivers
8 premium pay at the rate of one hour of the regular pay rates for each workday they were
9 deprived of lawful uninterrupted paid rest breaks." (*Id.* at ¶ 38.)
10   In support of removal, Defendants assume putative class members were denied
11 one meal period and one rest period per day, such that the amount in controversy for
12 these claims, including the premium pay for the denied break periods, is estimated to be
13 $550,982.16. (Notice at 9.) But again, Defendants provide no factual basis to support
14 the assumption that every class member was denied one meal and one rest period per
15 day. And as with the second cause of action, the Complaint's allegations specific to
16 Plaintiff are insufficient to suggest Defendants' alleged conduct amounted to a 100%
17 violation rate. Though Plaintiff essentially alleges Defendants structured the delivery
18 duties of class members in such a way that sometimes required them to forego meal and
19 rest periods, the assumption that *every* driver was forced to do so *every* day is
20 speculation and not supported by evidence. (*See* Compl. ¶ 36.) Moreover, that
21 Defendants allegedly "systematically denied" premium pay for not allowing these
22 breaks does not, in itself, establish that Defendants systematically denied the meal and
23 rest breaks. Plaintiff's allegations with respect to premium pay indicate that *when* such
24 breaks were denied, regardless of the frequency, Defendants failed to pay the statutory
25 rate for each missed break. Thus, with respect to these claims, the Court finds
26 Defendants failed to establish by a preponderance of the evidence that Plaintiff put
27 another $550,982.16 in controversy.
28 ///

### 4. Sixth Cause of Action: Itemized Wage Statements

In her sixth cause of action, Plaintiff alleges "[n]one of the wage statements provided to Plaintiff and Class Members accurately reflect all employer names and addresses, regular hours worked, overtime hours worked, regular hourly pay rates, overtime hourly pay rates, and/or actual gross wages and net wages earned . . . ." (Compl. ¶ 134.) Defendants calculate that 227 class members worked 4,261 workweeks, and they were paid on a weekly basis. (Notice at 9.) "Assuming a wage statement violation each pay period, as alleged in the Complaint, Plaintiff's claim for wage statement penalties alone places $437,450.00 in controversy." (Notice at 9-10 (citing Kerksick Decl. ¶¶ 7-9).)

Plaintiff's allegation here, that no wage statements were accurate, better supports a 100% violation rate, as Defendants assume in their calculations. Defendants' calculations further assume that every violation resulted in damages in the amount of the statutory minimum of $50,[4] and that the wage statement violations occurred in subsequent pay periods. Based on Plaintiff's allegations that no wage statements were accurate and the fact that class members were paid weekly, the Court finds these assumptions are warranted. Thus, Defendants have established by a preponderance of the evidence that $437,450 is in controversy in this case.

### 5. Seventh Cause of Action: Failure to Timely Pay Wages at Termination

Plaintiff alleges in her seventh cause of action that Defendants failed to "pay Plaintiff and Class members all earned wages . . . immediately upon termination and/or within seventy-two hours upon resignation." (Compl. ¶ 150.) And Plaintiff further claims Defendants failed "to compensate former employees (including Plaintiff and

---

[4] Labor Code section 226(e)(1) provides employees are entitled to recover "the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period."

9

Class Members no longer working for Defendants) for services rendered up to the time of dismissal or voluntary resignation." (*Id.* at ¶ 152.) Defendants adopt Plaintiff's allegation that Defendants "structure[ ] Delivery Drivers [sic] workloads to ensure that they work approximately 10 to 12 hours or more each workday . . ." (*id.* at 24), to calculate that, working 10 hours a day at $13.99 per hour for a period of thirty days,[5] the 274 putative class members put in controversy $1,149,978.00. (Notice at 10.)

These assumptions are supported by Plaintiff's allegations. Plaintiff claims she and "Class Members who no longer work for Defendants are further entitled to, and hereby seek, waiting-time penalties in amounts equal to thirty times their respective daily wages" under Labor Code section 203. (Compl. at ¶ 153.) This allegation supports the inference Defendants failed to pay any of the Class Members their earned wages within 30 days from their termination or resignation, such that the statutory cap limiting recovery to 30 days' worth of wages is an appropriate multiplier. Accordingly, the Court finds Plaintiff has put in controversy an additional $1,149,978.00 under her seventh claim.

### 6. Statutory Penalties under the Labor Code

Defendant also seeks to aggregate the penalties available under Labor Code sections 210, 226.3, 558, and 1197.1 that correspond with Plaintiff's alleged violations. (Notice at 10.) Here again, Defendants assume a 100% violation rate, such that every class member would be entitled to recover the amount of the penalty under each statutory provision. (*Id.*) But Defendants fail to justify this rate with any evidence. And courts have rejected calculating the amount in controversy based on statutory penalties when probative evidence underlying the alleged statutory violations is lacking. *Rosales*, 2015 WL 4537577, at *4 ("In the absence of any probative evidence in those amounts, the addition of any penalties Defendant claims Plaintiff might recover in determining the

---

[5] Labor Code section 203(a) provides a thirty-day limit on the per diem penalty recoverable for an employer's willing failure to pay the wages of an employee who is discharged or who quits.

amount in controversy would be based entirely on speculation.")

However, considering Defendants have established by a preponderance of the evidence the amount in controversy with respect to Plaintiff's sixth cause of action, the statutory penalties associated therewith under Labor Code section 226.3[6] may be included in the calculation. Thus, the Court finds Defendants have established another $1,065,250 is in controversy ($250 per workweek x 4,261 workweeks). Additionally, because the Court found Plaintiff's allegations of waiting time violations in her seventh cause of action sufficient to put another $1,149,978 in controversy, the Court also includes statutory penalties under Labor Code section 210[7] in connection with the seventh claim, in the amount of $426,100 ($100 per employee x 4,261 pay periods). (*See* Notice at 10-11.)

### 7. Attorneys' Fees

Defendants also contend attorneys' fees are properly included in the calculating the amount in controversy under CAFA and assume a benchmark rate of 25% of potential damages. (Notice at 12.)

Plaintiff's Complaint seeks attorneys' fees under California Code of Civil Procedure section 1021.5, which allows for attorneys' fees in employment class actions. (Compl. ¶ 138; Cal. Code Civ. Proc. Code § 1021.5.) And courts in the Ninth Circuit, including this one, have allowed an estimated fee award of 25% of a plaintiff's damages in calculating the amount in controversy under CAFA. *See, e.g.*, *Sanchez*, 2015 WL 12765359, at *7. Since Defendant has established by the preponderance of the evidence an amount in controversy of at least $3,078,778 ($437,450 under Plaintiff's sixth cause of action for violations of Labor Code section 226 + $1,065,250 in penalties under Labor Code section 226.3 + $1,149,978.00 under Labor Code section 203 + $426,100 under

---

[6] Labor Code section 226.3 provides a $250 penalty per employee per wage statement violation.

[7] Labor Code section 210 provides a $100 penalty for each failure to pay each employee.

Labor Code section 210), the Court includes an additional $769,694.50 (25% of $3,078,778) for attorneys' fees.

### 8. Total Amount in Controversy

Based on Plaintiff's Complaint and the evidence provided by Defendants, the Court calculates an amount in controversy of $437,450 for Plaintiff's wage statement claims, $1,065,250 in statutory penalties associated with those claims, $1,149,978 for Plaintiff's claims for late payment under Labor Code section 203, $426,100 under Labor Code section 210, and attorneys' fees in the amount of $769,694.50. Adding these numbers together, the Court calculates a total of $3,848,472.50 in controversy. Since this amount is less than CAFA's $5,000,000 minimum, the Court concludes it does not have jurisdiction over Plaintiff's claims.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Defendants have not established by a preponderance of the evidence that the amount in controversy in this case exceeds $5,000,000. Accordingly, the Court **GRANTS** Plaintiff's Motion to Remand. The clerk shall remand this action to Los Angeles County Superior Court and close the case.

**IT IS SO ORDERED.**

Dated: March 3, 2017

_____
HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT JUDGE